Good morning, your honors. My name is Adam Fulton. I'm with the law firm of Jennings and Fulton, and we're here today on behalf of Diamond Sands, and I'm honored to present this appeal on their behalf. I'd like to reserve three minutes for rebuttal. We're here today because we believe that the district court made several errors in denying Diamond Sands motion for preliminary injunction to enjoin the enforcement of the penalty provisions provided generally found in Clark County Code 7.100. These penalty provisions violate the 8th Amendment's excessive fines clause as to Diamond Sands and as to any owner in Clark County. In excessive fines cases, there are two steps. The challenger first has to demonstrate that the fine is a penalty subject to 8th Amendment scrutiny. Does the 8th Amendment even apply? And there is no dispute that the fines that can be levied under Clark County Chapter Code 7.100 are penalties. They are subject to 8th Amendment scrutiny. That point was never challenged below, and as such, step one is conceded. It was also never challenged by the county in the court in its briefings. We're only here to talk about step two, whether or not the fine runs afoul of the 8th Amendment because the fine is grossly disproportionate to the gravity of the defendant's offense. The issues confronting your honors today arise solely from step two of this analysis, which the Bejikian Court addresses. The district court committed several errors in its analysis at step two, and this analysis concerns the four factors the Bejikian sets forth under the 8th Amendment analysis. Factor one is the nature and extent of the underlying offense, and the court focuses on the culpability of the violator in this step. Step two is whether the underlying offense is related to other illegal activities. As set forth in Pimentel 2, this factor is neutral in civil cases. Factor three is whether other penalties may be imposed for the offense, and factor four is the extent of the harm caused by the offense. That is the harm that the government must demonstrate that is caused to it by the offense. So can I ask kind of a threshold question? Sure. You've just listed the factors, and as I understand it, as you've said today, we're evaluating 7.100 as to those factors. There's a whole bunch of discussion in the briefs about state law, not the county ordinance, but the state law, and I don't understand why any of that is relevant because it seems like what we have to do is figure out whether this fine under the county ordinance violates the federal constitution, and so where state law comes into that question when we're looking at the county ordinance is very confusing to me. So I agree with your honor that the state law is not as applicable to what your honors are addressing today, right, because we're just addressing that code provision as it applies to my client as an owner, so I agree with you. I believe that it was put in the brief because it's to provide context in how it came to be, and so a little additional background. Clark County previously had outlawed Airbnbs, like short-term rentals were completely outlawed. The state legislature then came in and said, hey, you can't ban them. Here's some provisions or requirements in order to actually put provisions in place, county commissioners throughout the state, and so the county ordinance arose out of that state law, and as we get to factor three, I'll point out when we get there that there were alternative remedies that the county could have employed outside of strict liability that they chose not to, but I'll get that assessment when we get to that factor. But I agree with your honor, I think that the state law is not, we're not here challenging the state law today. We're challenging the county ordinance. But it sounds like you agree that the county had the authority to enact an ordinance. Oh, I agree. Your question is whether the penalties were proper. I agree, your honor, 100%. They absolutely have the authority to enact the ordinance pursuant to state law. I agree with that. So under the first Bajikian factor, the district court's culpability analysis was fundamentally flawed. The district court approached the problem by accepting the county's argument that Diamond Sands was the person making the property available for use of the short-term rental, and that is wrong as a matter of law, and let me tell you why. Isn't there evidence that Diamond Sands probably had actual knowledge that there were ongoing violations of the ordinance? So we dispute that. There are declarations from the owners dispute that evidence, and the district court never found that as a factual matter of law, and a fact. In fact, the county cites to hearsay declarations of their people that they interviewed someone named Alex, but that's not Alex Dzinski, which is the problem. But on preliminary injunction, isn't the court able to consider hearsay evidence? Yeah, I agree, your honor, they are. But ultimately, whether they knew or not, I think also goes to the argument of whether there's strict liability under the statute. But again, we dispute that the property owners knew about it. In fact, we have lease language that says they're not allowed to do it. Our property owner has said that they're not supposed to do Airbnb's, and if they were, then they're allowed to terminate the leases, and so our evidence supports that what was submitted, the declaration support that they are not aware of or doing this. Why isn't there some sort of willful blindness notion in the background here, though? Like, why wouldn't it be reasonable for the county to think, okay, you're the owner, you can put up cameras that look at who's coming and going. And if you didn't, that was your choice. And we assume that you could have known. And so we assume it's essentially like constructive notice. Well, I think being being in Clark County and an apartment complex on the strip, I think you're putting up cameras and seeing who are coming and going for people in apartments, I don't think that would be able, somebody would be able to determine whether someone's Airbnbing it out based on people coming and going. But I think that just because a property owner is on notice, I don't think is as applicable to the fact that it's a strict liability under the statute. So the culpability factor, I think, is what the court should focus on and look at in this instance. But wasn't there also evidence that abatement notices were sent to Diamond Sands? And there wasn't any action taken and enforcement officers had interviewed employees of Diamond Sands about the short-term rentals. So wouldn't that be evidence that they were put on notice? That is correct, Your Honor. But that doesn't mean that under the Eighth Amendment analysis, that the fine's not excessive based on what's being assessed here against the property owner and what could be assessed in addition, right? And what is the theory by which we should look at what could be assessed? Why don't we just look at what is assessed and figuring out whether it's an excessive fine? Well, I think Your Honor is going to the Salerno, whether it's constitutional as to my client or as a facial challenge. I believe under Salerno, you're correct that it does need to be unconstitutional to my client in order to get to a facial challenge. But ultimately, Your Honor, I think that even if you assess the fines that were submitted against my client, our position today is that that also was unreasonable and grossly disproportionate. A $4,000 fine, we believe, is. And under Pimentel 2, the court looks at the proportionality analysis this court issued and said, hey, look, even a $63 fine is disproportionate because it was a 100% increase. And so I think under Pimentel 2, the court can find that, and under the Bajikian factors, the court can find that this is, in fact, an unconstitutional fine. But back to the, I want to focus a little bit on the culpability issue. And I think this is where it matters, because as a matter of law, there really are two targets underneath this code section. The person who is operating the residential unit for the purpose of transient lodging and the property owner. So the court never grappled with the distinction between those two different people. And when you're weighing culpability, you have to look at who is culpable and what is the purpose of that. So, and it matters here because they do have extremely different levels of culpability. The person that's operating the tenant that's leasing out the space has a high level of culpability, but that's not diamond sands. Because in the statute, the word operating or for the purpose has actual meaning. Those words mean what they say. And so they are targeted at the tenant under the code. And that person is actively violating the short-term rental ordinance. Now, if you contrast that with the only other person that can be, the only other provision that could be applicable to diamond sands, which is under E2 of the statute, that person has either no culpability or a low level of culpability. And the reason for that is the plain language of the statute. And so the property owner shall also be subject to, and this is what it says, and the remedies and penalties set forth therein. And that is the only code that could be applicable to diamond sands in this instance. And so that matters because we are talking- Under the ordinance, couldn't they also suspend short-term rentals or do an audit of potential violations with regard to diamond sands? So there are other penalties that are an option if they wanted to impose them? So the state statute gave them the right to create other remedies or other factors that they could do against the property owners, but they chose not to. And I think that's the issue. That goes to factor three, which is whether other penalties may be opposed for the offense. And here the county chose not to impose any additional requirements and the penalties tethered to those additional requirements against the property owner. Let me give you- Wait, I'm confused because I thought that 7100 had a misdemeanor option for a misdemeanor citation and also a right to suspend and revoke is that not true? I thought the county code actually had other options for enforcement. I think that's what Judge Schreier was asking, I think. So jumping to the state law doesn't make sense to me. I think we're talking about the county code. Yeah, so under county code ordinance 7.100.230- Yeah, F. Yes, sub F, they do have the right to do other enforcement options, agreed, but under the provision up above, under E.2, this specifically says where the person violating this chapter is not the owner of the property that is the subject of the violation, including without limitation a local representative, property manager, tenant or subtenant, the property owner shall also be subject to receipt of an administrative citation. So regardless of whether the client could even terminate the lease, regardless of whether my client- Let's say my client knew, hey, this person's leasing and they go, they're doing Airbnbs, and my client goes and terminates their lease, okay? After the fact, they still could be fined $10,000 a day. But if they aren't, why do we care? Like this gets back to, don't you have to show that the actual penalty to your client was unconstitutional? It does, and I believe that it was unconstitutional, Your Honor, because the $4,000 fine is unconstitutional because there was no analysis done just to determine what the proportionality of that fine is, and I believe that goes to the harm factor under the fourth Lejikian factor. Well, the proportionality is a question of law that we could evaluate, though, right? Do we need to say that the district court had to say particular magic words about that? I'm sorry, Your Honor? Do we have to ask whether the district court said a particular magic phrase or something, or can we just figure out whether it would be proportional? Is it a legal question that we can decide on appeal? I believe you probably can decide it on appeal. I believe Your Honor can do whatever she wants under the law, but I do think that when the court's analyzing whether or not the harm is proportional to the fine, there was no analysis or any analysis done by the county to give the court any determination of what the harm actually was. There was no policy. But that's like the policies on the face of the ordinance, right? About all the harms of short term. Yes, you're right. That's exactly right. So the policies that the county states are these broad policies, right? They're the goals that they have, right? Like we don't want taxation. We want no loud parties for neighborhoods, right? But the court and the county, the district court didn't require, and the county never provided any actual evidence of harm resulting from the property owner's actions. That's the problem here. There is no harm or evidence presented. Well, but some of those broad policy things were about having housing available to people who actually live there permanently. So isn't it just by definition satisfied when you're doing a short term rental instead? But they still have to provide an analysis to the nature and extent of the harm that the government suffers as a result of the action. And that was never provided in the underlying briefing, Your Honor. They never provided any evidence of what the harm is. I don't know what you mean by harm. The government is trying to protect the interests of its citizens, I assume. Correct. And the people who were living in this place were complaining about it. They didn't like it. So I'm not sure that there has to be some direct harm to the county that allows them to enforce the ordinance. So under Pimintel 2, though, the problem was that the court gave deference to the county in that issue of saying, hey, we just agree that what they're saying is legitimate, right? What their policy goals are are fine. But under Pimintel 2, Pimintel 2 stated that you can't just automatically give reflexively defer to the government where it stands to benefit. And in this case, the county obviously stands to benefit. So there must be skepticism in applying the analysis of the harm. So for instance, why can't the penalty be a million dollars or a billion dollars? There has to be some analysis done as to what the what the. But if the penalty was a million dollars, it would appear more likely to be an excessive fine than a $2,000 fine. So we can look at balancing harms, which the county did when they enacted that ordinance. Why does it have to be specific to this allegation when you're looking at balancing those harms? Because under the 8th Amendment, we have to look at the court has to look under the 8th Amendment at what the harm is done to the to the county or the government when assessing whether the fine is proportional or grossly disproportionate. Right. So that analysis has to be done. And it for the district court. That was my question about whether we you have to give us an argument because we get to decide whether it's proportional. So whether it was done by the district court doesn't matter. You need to give us an argument about why the idea that preventing short term rentals from undermining the availability of housing for people who actually live in the town isn't a harm that is worth two thousand dollars. Well, so so the harm in this case, they were fined four thousand. OK, four thousand. So why is that? I mean, but it's too I thought it was two violations. But regardless, say four thousand, then why isn't the harms that they describe on the face of the ordinance just enough plausibly and facially to justify this fine, which is not that huge? So I guess when you go back and you look at the the harshness, so you're asking me really the harshness of the penalty compared to the gravity of the offense. That's what you're asking me. Right. And so in that instance, I'll give you an example. If you compare the transient lodging tax in Clark County, right, which is 13.38 percent in the primary gaming corridor. Right. The max penalty per violation in this ordinance is twenty thousand. We're asking about the actual four thousand dollars, the actual penalty to your client. OK, so the actual penalty to my client for four thousand dollars is still vastly misproportionate to what a nuisance penalty would be under our current statute and regulation. In addition, this I know that we're addressing with the county ordinance, but the state ordinance, the state law didn't provide that you could find owners for this amount. The county came up with that. But you already told Judd Schreier that they had the authority to enact this ordinance. They have the authority to enact a ordinance. The question is whether the ordinance is a violation of the Constitution. And I know I'm over my time. Yeah, I think we better cut you off. We'll give you two minutes for a rebuttal, let's hear from the other side. Good morning. May it please the court. My name is Timothy Allen from the Clark County District Attorney's Office, Civil Division, and I represent appellee Clark County, Nevada. This case is a constitutional challenge as to the fines for operating a short term rental without a license that were imposed under Clark County Code 7-100-030. This case started when Clark County received several complaints from members of the public who complained of the nuisances associated with the commercial short term rentals that were occurring at the residentially zoned apartment building. Clark County Code enforcement investigated and found that there were several violations taking place at the complex and noted that many of the units were being used as short term rentals and they had special keypad locks instead of the traditional key deadbolt locks that many of the units that were not being used at the complexes and Airbnb had. And Clark County sent several notices of violation to Diamond Sands warning that fines would be issued and if the rentals didn't stop at those four units that were being investigated. At that point, one of the owners of Diamond Sands responded and said they would stop the short term rentals and turn the keys over to the leasing office so they could be rented out long term. However, Clark County continued to inspect and found violations fining Diamond Sands a thousand dollars for each violation they found which eventually led to four thousand dollars in total. Diamond Sands paid two thousand dollars initially and then sued Clark County in this case for unconstitutionally excessive fines. One of Diamond Sands main arguments is that the fines are unconstitutionally excessive because they are being fined for the conduct of their tenants and they are totally innocent. But this argument is not supported by the record. Further, Diamond Sands points to Clark County Code 7-100-230-E-2 and says that it allows fines for innocent owners but Diamond Sands was not under Clark County Code 7-100-230-E-2. Diamond Sands was fined under Clark County Code 7-100-030 which is operating a short term rental without a license. Clark County believed that it was Diamond Sands that was operating the short term rental without a license and fined Diamond Sands for that conduct. Diamond Sands was not fined under Clark County Code 7-100-230-E-2 so even if this court enjoined that section it would not overturn the fines issued to Diamond Sands. So Diamond Sands does not even have standing to challenge that code section. Further, Diamond Sands argues that it could be fined ten thousand dollars per violation for things that they are not responsible for but this is another hypothetical argument without any actual injury as to obtain standing. Further, the Nevada statute... Can I just pause and go back to the idea that they sued under the wrong provision or something? How would they know that? Is there something in the record about where they were given notice of what they were being fined for that tells them that? Yes, so the notice of violation that Clark County issued to Diamond Sands and the actual citations themselves were issued under Clark County Code 7-100-030 and that is part of the record. So I believe it is Exhibit D is one of the examples ER 68. It's the notice of abatement and it says nature of violation 7-100-030 operating without a license. And so it was Clark County's understanding that owners were operating the short-term rentals. I understand that's disputed now but the district court did find that there was evidence that they were operating and at very least had knowledge that these units were being operated and did nothing to stop them. So sorry, I don't remember, maybe I'm just forgetting, but I don't remember an argument in your brief that essentially they have no standing at all. They're challenging the wrong thing altogether and this whole case is on the wrong track. Did you make that argument? Well, I think I made it but I think I just made it in a really poor and unclear way to be honest. But I think the way I made it was in discussing the first factor of Pimentel, the nature and cause of the underlying offense. And so in that I argued that Diamond Sands wasn't being fined for being an innocent owner of a short-term rental violating tenant. And I argued that they themselves were causing the violation and so the nature of the offense was that they were culpable for their own conduct and not for the conduct of somebody else. And so as I was doing that analysis and I still saw in the reply brief that they were responding to this 230E2 section, I realized that, you know, 230E2 could cease to exist and they would have still been fined in this case and they could still be fined going forward. And so that's why I raise it here today and I apologize if I didn't brief that better. I'm just trying to figure out whether we can, I mean, it seems like a new argument. Can you a page of your brief where you said they're talking about the wrong section or something? Because it seems like if you don't have that, we probably should proceed on what was briefed, which maybe you'll win on. But to talk about, to say that really just this whole thing is essentially a tangent that they have no standing to be talking about seems like a real switch. Yeah, I think if you look to the first factor, the Pimintel, that's where I discuss that they were fined for their own conduct and not for the conduct of their tenants. But I also- That's an argument you could make in response to the argument they are making. I mean, under any of these sections, there is a question of whether they could have stopped this or whether they were willfully blind. Those kind of arguments exist under any of the provisions of this ordinance, right? I'm sorry, I don't think I fully understand the question. I mean, whichever part of this ordinance you're trying to invoke, they could say, it really isn't us, it's really our tenant. And you could say back, no, you own this property and you have the ability to control it. And if you didn't control it or you didn't pay attention, that's your fault. So that kind of argument that this is really about your conduct seems like it could be made as to any provision of this ordinance. It doesn't seem to signal to us that they're using the wrong provision. Yeah, and I agree with that. And to the point of what they're saying in 230, I think 230E2 specifically says that if they violate the code, they say that it that their tenant violates the code and then they're automatically responsible. But I don't think that section even says that. I think 230E2 just says they're subject to their own citation. And I think a citation can only be issued for certain things under the code. And one of those things is operating without a license, which is what they were fined for, if that makes sense. So what would you like us to do? Well, I think you can just uphold the district court's finding that they're unlikely to succeed on the merits, which is why she denied the motion on preliminary injunction. But on the basis that they are talking about the wrong section or on the basis that they are incorrect that this fine is excessive under whichever section it is? I think that you could just find that they have failed to show that they're likely to And so that's under, obviously, a number of the factors. I believe all the factors weigh in favor of Clark County. The first factor being the nature of the violation is, I think they did have, and there's evidence in the record that they did participate in operating the short-term rentals. But at very least, as the district court found, had actual knowledge that these short-term rentals were occurring and failed to remedy those violations. And that would be relevant to all the sections? I think that's relevant to the first Pimentel factor as well as. Yeah. And then for the second factor, the court found neutral, but as I argued in my brief, I believe that this is associated with the failure to pay transient lodging taxes, which is a separate offense with separate elements. And the court said that there was no case law that either party cited. But I believe under the factors, I don't know how to apply those factors when analyzing a municipal fine. And so I would ask the court to also find that the second Pimentel factor weighs in favor of Clark County. If there's no other questions, I can conclude my argument there. Thank you for your time. Thank you very much. I can't remember what I said. Two minutes, please. Thank you. So I'll start by stating that I was not, I don't believe there's anything in their brief that says we don't have standing to bring this forward. And so I would ask the court to reject that argument on its face because that's the first time I've ever heard of this argument coming up and it wasn't in their brief. So I didn't see it in the brief either, but isn't standing something that can be raised at any time, even at the appellate level? Doesn't the court always have to determine if they're standing? Well, your honor, when we briefed it on the underlying documentation, everything before the district court, everything before your honors, this is the first time the argument has ever been raised ever. And so I don't believe that. Well, the standing argument stems from the idea that you've been talking about the wrong subsection. Have they argued before that you've been talking about the wrong subsection? No, your honor. It hasn't come up before. And so, so I believe for that reason, the court should not take that into consideration. In addition, under, you asked me the question earlier, why is it, why is it unconstituted? Why is this penalty unconstitutional? Why is the proportionality? Why is the harm there? I think that the answer is because it's arbitrary on the amount of fine that was assessed. They can assess anything between a thousand to $10,000 per violation. And, and in this, in their own brief, they admit they could have fined my client $140,000. The arbitrary decision, even in their declaration, they admit we can find, we have no basis. We just decided. What case says that fining discretion makes something unconstitutional? I believe, I believe Pimentel 2 went to that analysis when the Pimentel 2 court went through and looked at what evidence did the government provide? In that case, the court said that because the government provided, and I believe off the top of my head, they use the word zilch or nothing, that because they provided no evidence of any of, of the proportionality of the reason that it's unconstitutional under the Eighth Amendment. It was only $63 that they found unconstitutional. But it was like interest. It was like the late fee. And so there was no, there was no evidence that the local government had suffered some amount of interest equivalent to that. But we have an ordinance that talks about a whole bunch of kinds of harms and not a very big fine. There's also evidence specific to this instance where people that lived in that apartment building were complaining and that there was more noise. There was more people moving around at different times. So in addition to the general reasons why the ordinance was enacted, there's specific complaints dealing with that property. I agree, Your Honor, but the government still has the duty to show something more than, than just a general policy goal. And that's what Pimentel 2 focused on. When you look at Pimentel 2, the, the argument is in Pimentel 2 was that you have to show that there's actual harm put forth to the government. So in this instance, they haven't done that. Like they could have shown, Hey, look, we, we have to go out and do additional policing. We have additional police costs. We have additional you know, there's, there's more violence that they haven't resulted in these costs. But the county said that there's an affordable housing problem that's being impacted by these short-term rentals. Isn't that identifying a specific local problem? So I agree with Your Honor. And by the way, I'm not disputing the fact that the county has the right to put forth general policy goals and general things that it wants. But when a government puts forth general policy goals and then fines people under a strict liability statute, it has to have a basis to apportion that amount of the fine. And they don't do that here. That's real argument that we're trying to make is they have to provide some type of evidence, something, and that's what Pimentel 2 says. Okay. So what do you think they should have needed to provide that hasn't been provided here? Absolutely. So they should have needed to provide something that shows more than just a policy goal as Pimentel 2 says, if they would have provided something that says, Hey, uh, we had to have additional, you know, as a result of these property owners. Cause remember, we're also bringing a facial challenge. So as a result of all the property owners in the county going out and allowing short-term leases, we've had to employ more police officers, or we've had to have more heart or there's more. Okay. It sounds like you think it has to be the county itself. Why can't the county say, we think complaints about noise are show real distress in our community. And so that is the reason for the fines. Because, because Pimentel 2 says that it has to show harm to the government. But that's because it was a parking thing that no one else was involved in, but that's not the kind of ordinance this is. And I believe that Pimentel 2 was talking about actually the benefit that the government receives, right? So in this case, the eighth amendment says, Hey, we need to stop or take a look at a serious look at when the government stands to benefit from an ordinance. In this case, they clearly stand to benefit. Um, I think that's undisputed. They can, they can fine $10,000 per day to the property owner. And if they add the tenant in there, which they didn't do in this case, but if they find the tenant as well, it's $20,000 per day. And so when, when the court is analyzing whether or not a fine is excessive under the eighth amendment, the, the standard that the, that the government has to show to the court is what harm it suffers. It's not just a general policy and Pimentel 2 supports that. Okay. I think we understand your argument. Thank you very much. Thanks both sides for the helpful arguments. This case is submitted and we are adjourned. Thank you, your honors.
judges: SCHROEDER, FRIEDLAND, Schreier